# **<u>EXHIBIT A</u>**

Filing # 82887672 E-Filed 01/04/2019 04:10:37 PM

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

Sara McPherson, and
Robert McPherson;

    Plaintiff(s),

      -vs-

B. BRAUN MEDICAL, INC.;
and B. BRAUN INTERVENIONAL
SYSTEMS, INC.

    Defendant(s).

Case No.: 05-2019-CA-010532-XXXX-XX

Division: _____

## SUMMONS

THE STATE OF FLORIDA
TO EACH SHERIFF OF THE STATE:

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in the above styled cause upon the defendant(s):

    B. BRAUN INTERVENIONAL SYSTEMS, INC.
    a foreign corporation
    824 12th Ave
    Bethlehem, PA 18018
    Attn: Service of Process

Each defendant is hereby required to serve written defenses to said complaint or petition on plaintiff or plaintiff's attorney, whose name and address is

    CARMEN A DE GIST, ESQUIRE
    MARC J BERN & PARTNERS LLP
    101 W. Elm Street, Suite 215
    Conshohocken, PA 19428

within 20 days after service of this summons upon that defendant exclusive of  the day of service, and to file the original of the defenses with the Clerk of this Court before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on  JANUARY 7           , 2019.

                     SCOTT ELLIS
                     Clerk of Circuit Court

By: _____
                     Deputy Clerk

Summons Form - Corporate

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BREVARD COUNTY, FLORIDA**

Sara McPherson, and
Robert McPherson;

      **Plaintiff(s),**

              -vs-

B. BRAUN MEDICAL, INC.;
and B. BRAUN INTERVENIONAL
SYSTEMS, INC.

      **Defendant(s).**

Case No.: ___05-2019-CA-010532-XXXX-XX___

Division:_____

**SUMMONS**

**THE STATE OF FLORIDA**
**TO EACH SHERIFF OF THE STATE:**

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in the above styled cause upon the defendant(s):

      B. BRAUN MEDICAL, INC., a foreign corporation
      c/o Division of Corporations
      824 12th Ave
      Bethlehem, PA 18018
      Attn: Service of Process

Each defendant is hereby required to serve written defenses to said complaint or petition on plaintiff or plaintiff's attorney, whose name and address is

      CARMEN A DE GISI, ESQUIRE
      MARC J BERN & PARTNERS LLP
      101 W. Elm Street, Suite 215
      Conshohocken, PA 19428

within 20 days after service of this summons upon that defendant exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on ___JANUARY 7___, 2019.

                           SCOTT ELLIS
                           Clerk of Circuit Court

                           By:_____
                           Deputy Clerk

FORM 1.997 CIVIL COVER SHEET

I.   CASE STYLE

IN THE CIRCUIT COURT OF THE Eighteenth _____ JUDICIAL CIRCUIT,
IN AND FOR  Brevard _____ COUNTY, FLORIDA

SUE MCPHERSON, et al _____

Case#: OS-2019-CA-010532-XXXX-X-X
Division:

Plaintiff(s),

vs.

B. BRAUN MEDICAL, INC., and

B. BRAUN INTERVENTIONAL SYSTEMS, INC.

Defendant(s).

II.   TYPE OF CASE
(If the case fits more than one type of case, select the most definitive category.)  If the most descriptive label is a subcategory (is indented under a broader category), place an "x" in both the main category and subcategory boxes.

- Condominium
- Contracts and indebtedness
- Eminent domain
- Auto negligence
- Negligence – other
  - Business governance
  - Business torts
  - Environmental/Toxic tort
  - Third party indemnification
  - Construction defect
  - Mass tort
  - Negligent security
  - Nursing home negligence
  - Premises liability – commercial
  - Premises liability – residential
- ☒ Products liability
- Real Property/Mortgage foreclosure
  - Commercial foreclosure $0 - $50,000
  - Commercial foreclosure $50,001 - $249,999
  - Commercial foreclosure $250,000 or more
  - Homestead residential foreclosure $0 - $50,000
  - Homestead residential foreclosure $50,001 - $249,999
  - Homestead residential foreclosure $250,000 or more
  - Non-homestead residential foreclosure $0 – $50,000

- Non-homestead residential foreclosure $60,001 - $249,999
- Non-homestead residential foreclosure $250,00 or more
- Other real property actions $0 - $50,000
- Other real property actions $50,001 - $249,999
- Other real property actions $250,000 or more
- Professional malpractice
  - Malpractice – business
  - Malpractice – medical
  - Malpractice – other professional
- Other
  - Antitrust/Trade Regulation
  - Business Transaction
  - Constitutional challenge-statute or ordinance
  - Constitutional challenge-proposed amendment
  - Corporate Trusts
  - Discrimination-employment or other
  - Insurance claims
  - Intellectual property
  - Libel/Slander
  - Shareholder derivative action
  - Securities litigation
  - Trade secrets
  - Trust litigation

III.   REMEDIES SOUGHT (check all that apply):
     X   Monetary;
     ☐   Non-monetary declaratory or injunctive relief;
     ☐   Punitive

IV.   NUMBER OF CAUSES OF ACTION: ( II  )

     (Specify) _____

     _____

V.   IS THIS CASE A CLASS ACTION LAWSUIT?
     ☐   Yes
     ☒   No

VI.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?
     ☒   No
        Yes – If "yes" list all related cases by name, case number and court:

     _____

     _____

VII.   IS JURY TRIAL DEMANDED IN COMPLAINT?
     ☒   Yes
     ☐   No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my
knowledge and belief.

Signature: _____       Fla. Bar #:  97303
             Attorney or party                            (if attorney)

Carmen A. De Gisi                               Date: _01/04/2019_
          (type or print name)

III.   REMEDIES SOUGHT (check all that apply):
    ☒   Monetary;
    ☐   Non-monetary declaratory or injunctive relief;
    ☐   Punitive

IV.   NUMBER OF CAUSES OF ACTION: (11  )

        (Specify) _____

        _____

V.   IS THIS CASE A CLASS ACTION LAWSUIT?
    ☐   Yes
    ☒   No

VI.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?
    ☒   No
    ☐   Yes – If "yes" list all related cases by name, case number and court:

        _____

        _____

VII.   IS JURY TRIAL DEMANDED IN COMPLAINT?
    ☒   Yes
    ☐   No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature: _____        Fla. Bar #: _97303_____
                    Attorney or party                                                  (if attorney)

_Carmen A. De Gisi_____        Date: _01/04/2019_____
                (type or print name)

Filing # 82887672 E-Filed 01/04/2019 04:10:37 PM

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT FOR
BREVARD COUNTY, FLORIDA

CIVIL CIRCUIT DIVISION

CASE NO.: 05-2019-CA-01052-XXXX-XX

Sara McPherson, an individual;
and Robert McPherson, an individual,

      Plaintiffs,

         v.

B. BRAUN MEDICAL, INC., a foreign
corporation; and B. BRAUN INTERVENIONAL
SYSTEMS, INC., a foreign corporation,

      Defendants.

_____/

## COMPLAINT FOR DAMAGES

Plaintiffs, SARA MCPHERSON and ROBERT MCPHERSON, by and through their attorneys, MARC J. BERN & PARTNERS LLP, complain and allege against Defendants B. BRAUN MEDICAL, INC., and B. BRAUN INTERVENIONAL ("Defendants" or "BRAUN Defendants") on information and belief, alleges as follows:

### PARTIES

1. Plaintiff, Sara McPherson and Robert McPherson, are residents of the State of Florida and resides 2615 Jupiter Blvd. SW, Palm Bay, Florida. At the time of Plaintiff Sara McPherson's IVC implant, Plaintiff lived in Palm Bay, Florida.

2. Plaintiff, Sara McPherson, is an individual, who was injured as a result of the use of B. BRAUN VenaTech™ vena cava filter. Plaintiff brings this civil action for damages caused as a direct result of the B. BRAUN VenaTech™ vena cava filter.

3.      Plaintiff, Robert McPherson, is and individual, who suffered because of Plaintiff Sara McPherson's injuries, a lot loss of consortium.

4.      Plaintiff, Sara McPherson, was implanted with a B. BRAUN VenaTech™ vena cava filter, which caused Plaintiff's subsequent injuries as described herein.

5.      Defendants B. BRAUN MEDICAL, INC. is a Pennsylvania corporation duly organized and existing under the laws of Pennsylvania and B. BRAUN INTERVENTIONAL SYSTEMS, INC. is a Delaware corporation duly organized and existing under the laws of Delaware, their corporate headquarters located at 824 12th Avenue, Bethlehem, Pennsylvania, and doing business throughout the United States.

6.      BRAUN Defendants, at all times relevant to this action, designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold its filter to be implanted in patients, such as Plaintiff Sara McPherson, throughout the United States.

7.      At all times mentioned herein, each Defendants were the representative, agent, employee, or alter ego of the other Defendants(s) and in doing the things alleged in this Complaint was acting within scope of its authority.

8.      At all times relevant herein, BRAUN Defendants were citizens of the State of Pennsylvania, was engaged in business in Pennsylvania and conducted substantial business activity in Pennsylvania. Defendants has also carried on solicitations or service activities in Pennsylvania.

9.      "B. BRAUN MEDICAL INC." and "B. BRAUN INTERVENTIONAL SYSTEMS" ("BRAUN Defendants," or "Defendants") includes any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of

1

any kind; the predecessors, successors, and assigns; their officers, directors, employees, agents, representatives; and any and all other persons acting on their behalf.

10.     Based on information and belief, BRAUN Defendants, either directly or through its agents, servants, and employees, and at all times relevant hereto, have sold and distributed the B. BRAUN VenaTech™ vena cava filter, IVC Filter, to patients, doctors, and hospitals in throughout the United States.

11.     Plaintiffs alleges that each of the named Defendants is responsible in some manner for the occurrences alleged herein and caused the hereinafter described injuries and damages sustained by Plaintiff.

12.     Based on information and belief, BRAUN and the Plaintiffs are domiciled in different states.

## GENERAL FACTUAL ALLEGATIONS

13.     The inferior vena cava ("IVC") is a vein that returns blood to the heart from the lower extremities.

14.     In certain individuals, blood clots or thrombi travel from the blood vessels in the leg and pelvis, through the IVC and into the lungs, causing a pulmonary embolism ("PE"). These thrombi can also develop in the deep leg veins and are referred to a deep vein thrombosis ("DVT"). PEs and DVT are dangerous and can often result in death.

15.     Individuals who are at risk of clotting are often treated with anticoagulants such as Heparin, Warfarin, or Lovenox to reduce the risk.

16.     For individuals who are at high risk for PE and/or DVT or for whom anticoagulants are contraindicated, doctors may recommend implantation of an IVC filter to reduce the risk of a thrombotic event.

17.    An IVC filter is a medical device that is designed to prevent blood clots from traveling from the lower extremities to the heart and lungs. It is inserted into the IVC and works by trapping and filtering clots that form in the lower portions of the body.

18.    The first transvenous method of interrupting bloods clots in the IVC was developed in 1967 with the advent of the Mobin-Uddin umbrella filter followed by the Greenfield filter in 1973. The Mobin-Uddin umbrella filters and the original Greenfield filters are permanent filters with no retrieval option.

19.    Concerns over long-term complications of permanent IVC filters, particularly in patients in need of PE prophylaxis with a temporary contraindication to anticoagulation, has led to the development of temporary, retrievable filters.

20.    Beginning in or around 2003, medical device manufacturers also began marketing optional or retrievable IVC filters. These filters are designed to be removed from a patient when the risk of PE/DVT has passed. They were not designed to remain inside the IVC indefinitely.

21.    The BRAUN Defendants research, develop, manufacture, test, market, advertise, promote, distribute, and/or sell IVC filters that are marketed and sold as a permanent device to prevent, among other things, recurrent pulmonary embolism via placement in the vena cava.

22.    The B. BRAUN VenaTech™ vena cava filter, which was designed, manufactured, distributed, marketed, and/or sold by the BRAUN Defendants, is a permanently implanted metal device designed to prevent pulmonary embolism and DVT, and is designed to protect from perforation of the vena cava wall, and to protect from filter migration.

23.    The filter can be guided thought the subclavian, brachial, jugular veins or femoral access. The filter cartridges are uniquely marked to prevent misloading.

3

24.     The filters, as manufactured are self-centering, with patented stabilizing legs which were intended to prevent filter tilting during the implantation to eliminate the possibility of perforation or migration.

25.     The BRAUN Defendants applied for U.S. Food and Drug Administration ("FDA") clearance to market their B. BRAUN VenaTech™ vena cava filter and/or its components under Section 510(k) of the Medical Device Amendment.

26.     In 2001, the BRAUN Defendants obtained FDA clearance to market the B. BRAUN VenaTech™ vena cava filter under Section 510(k) of the Medical Device Amendment.

27.     Section 510(k) allows for the marketing of medical devices, so long as the medical device is deemed substantially equivalent to other legally marketed predicate devices without formal review for the safety of efficacy of the device.

28.     Defendants obtained FDA clearance under Section 510(k), and therefore bypassed the requirement to have the B. BRAUN VenaTech™ vena cava filter independently evaluated by the FDA or its experts.

29.     Section 510(k) permits the marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of said device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" ("PMA") process in its amicus brief filed with the Third Circuit in *Horn v. Thoratec, Corp.*, which the court quoted from:

30.     A manufacture can obtain an FDA finding of 'substantial equivalence' by submitting a premarket notification to the agency in accordance with section 510(k) of the [Food, Drug, and Cosmetic Act]. 21 U.S.C. § 360(k).

31.     A device found to have 'substantial equivalence' to a predicate device is said to be

'cleared' by FDA (as opposed to 'approved' by the agency under a PMA). 376 F.3d 163, 167 (3d Cir. 2004) (emphasis in original).

32.     A premarket notification submitted under 510(k) is thus entirely different from the PMA process, which requires data sufficient to demonstrate that the medical device is safe and effective.

33.     In *Medtronic, Inc. v. Lohr*, the U.S. Supreme Court similarly described the 510(k) process, observing as follows:

> If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the device is "substantially equivalent" to a pre-existing device, it can be marketed without further regulatory analysis. […] The § 510(k) notification process is by no means comparable to the PMA process; in contrast to the 1,200 hours necessary to complete PMA review, the 510(k) review is completed in average of 20 hours. […] As one commentator noted: "The attraction of substantial equivalence to manufacturers is clear. Section 510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets processed quickly.518 U.S. 470, 478-79 (1996) (*quoting* Adler, The 1976 Medical Device Amendments: A Step in the Right Direction Needs Another Step in the Right Direction, 43 Food Drug Cosm. L.J. 511, 516 (1988)).

34.     Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the manufacturer remains under an obligation to investigate and report any adverse events associated with the drug…and must periodically submit any new information that may affect the FDA's previous conclusions about the safety, effectiveness, or labeling…" This obligation extends to post-market monitoring of adverse events/complaints.

35.     The BRAUN Defendants' contention that the B. BRAUN VenaTech™ vena cava filter is intended for multifunction (both temporary and long-term use), has been presented to the medical community.

36.     The B. BRAUN VenaTech™ vena cava filter is marketed and sold as a permanent filter.

37.     The B. BRAUN VenaTech™ vena cava filter is conical in shape, is made of Phynox (a.k.a Elgloy) wires, a cobalt-chromium-nickel alloy, and can be placed through a sheath. It also has side hooks that enable the filter to fix into place.

38.     In 2007, the U.S. Food and Drug Administration issued a Class II Device Recall on B. BRAUN VenaTech™ vena cava filter due to faulty packaging and issues with device sterility and safety.[1] A Class II recall is the second most grievous classification of recall, based on severity of fault and danger to consumers. The recall was lifted from B. BRAUN VenaTech™ vena cava filters on March 2, 2008.

39.     The FDA released a MAUDE Adverse Event Reports, published to the public regarding the B. BRAUN IVC filters.

40.     The reports, respectively titled; "MAUDE Adverse Event Report: B. BRAUN Medical, Inc., VenaTech™ vena cava Vena Cava Filters" describe complaints and concerns submitted to the FDA regarding the filters.

41.     A MAUDE report from 2013 reports a patient who suffered multiple bilateral pulmonary emboli after the implantation of the BRAUN VenaTech™ vena cava filter. The patient underwent extensive surgery to remove the filter to dislodge it after it had embedded in the patient's right ventricle.[2]

42.     Another MAUDE adverse incident report was submitted to the FDA and later released describing incidents when the legs (or struts) of the B. BRAUN VenaTech™ vena cava filter did not properly deploy and became stuck on each other while in the vena cava.[3]

---

[1] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=65749
[2] https://www.accessdata.fda.gov/SCRIPTs/cdrh/cfdocs/cfmaude/detail.cfm?mdrfoi__id=3019073
[3] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/detail.cfm?mdrfoi__id=1423213

43.     A prior MAUDE adverse incident report was released in 2007 regarding the B. BRAUN Medical, Inc., VenaTech™ vena cava Vena Cava Filters having the defect of "arms" of the filter being bent, displaying malignment.[4]

44.     Another MAUDE report from 2007 documented an incident where the B. BRAUN VenaTech™ vena cava filter had migrated to the patient's heart, requiring surgical explant surgery.[5]

45.     In September 25010, the U.S. Food & Drug Administration (FDA) issued a warning against leaving inferior vena cava filters implanted in patients for extended periods due to their potential to cause adverse health complications.

46.     FDA warnings stated that IVC filters are for short-term use in patients at risk for pulmonary embolism, and implanting doctors are to remove the devices once the risk subsides.

47.     The FDA published studies concerning risks of doctors not retrieving IVC filters intended for short-term placement, exposing patients to problems caused by fractured implants and migrating implants, which can be fatal.

48.     The FDA has since issued two alerts over the problematic nature of permanent and retrievable filters, the first in 2010 following the receipt of some 900 adverse event reports in its reporting database.

49.     A further warning was issued four years later, at which point the FDA began affirmatively urging doctors to remove IVC filters, especially retrievable filters, within one to two months once the danger for a pulmonary embolism had passed.

50.     Despite the FDA alerts in 2010 and 2014 advising of the risks of long-term implantation and urging doctors to remove IVC filters after two months, BRAUN Defendants'

---

[4] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/Detail.CFM?MDRFOI__ID=851943
[5] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/detail.cfm?mdrfoi__id=893086

continued to market their B. BRAUN VenaTech™ vena cava filter for long-term use, defying the general instruction and recommendations of the FDA.

51.    In 2012, an annual report released by the <u>American College of Chest Physicians</u> "ACCP") titled *Evidence-Based Clinical Practice Guidelines on Antithrombic Therapy and Prevention of Thrombosis* concluded that "the routine use of IVC filters in addition to anticoagulants is <u>not</u> recommended for most patients with pulmonary embolism."

52.    The authoritative report further provided a caution against use if IVC filters because there are "no large studies proving or disproving the efficacy of retrievable filters conclusively" or any indisputable medical clinical evident that this measure is safe for patients with pulmonary embolism of DVT.

53.    Section 502(a) and 201(n) of the Federal Food Drug and Cosmetic Act ("the Act") requires the BRAUN Defendants to fully and accurately disclose information relating to fracture or migration of the IVC filter, perforation of the heart, lungs, other vital organs, the wall of the vena cava and tissue, cardiac or pericardial tamponade, chest pain, shortness of breath, severe recurrent pulmonary embolisms and DVT, occlusion of clogging on the IVC filter, subsequent revision surgeries, difficulty or impossibility of removal, and other adverse effects of the B. BRAUN VenaTech™ vena cava filter and other labeling, and to include adequate warnings concerning these and other risks in promotional materials for B. BRAUN VenaTech™ vena cava filters.

54.    The Act also prohibits Defendants from minimizing these risks and promulgating misleading claims that the B. BRAUN VenaTech™ vena cava filter is safer than the other IVC filters on the market or that IVC filters in general are a safer long-term alternative to anticoagulant therapies.

## PLAINTIFF SPECIFIC FACUTAL ALLEGATIONS

55.     On or about September 25, 2008, Plaintiff, Sara McPherson, was implanted with the B. BRAUN VenaTech™ vena cava filter.

56.     Plaintiff, Sara McPherson, had been hospitalized at Palm Bay Community Hospital located in Palm Bay, Florida. Upon information and belief, the Plaintiff, Sara McPherson, was implanted his IVC filter for the "prevention of pulmonary embolism."

57.     The B. BRAUN VenaTech™ LP vena cava filter system that was implanted into Plaintiff, Sara McPherson, in 2008 was designed and manufactured by B. BRAUN as positively identified on Plaintiff's surgical operative report and medical records.

58.     Upon information and belief, the B. BRAUN VenaTech™ vena cava filter was implanted and utilized in accordance with Defendants 'specific instructions, guidelines, and directives. Radiologist Dr. Robert J. Kennedy oversaw the surgery.

59.     The Plaintiff, Sara McPherson has never considered for revision or removal of the device by any medical professionals, nor was she recommended to consider removal upon her surgical discharge.

60.     On or about October 6, 2017 Plaintiff, Sara McPherson was evaluated at University Center Imaging in Melbourne, Florida to receive an update on the condition of her IVC filter.

61.     The initial scan indicated evidence of that the prongs of the IVC filter extended slightly beyond the margins of the IVC despite its proper positioning. This evaluation was done by Dr. Mark Preston.

62.     On October 23, 2017 a second opinion was issued by a Dr. Brian Zernich, which indicated filter perforation was present.

63.    Plaintiff, Sara McPherson's implant, remains within her body for over ten years, which constitutes a long-term implant.

64.    The long-term implantation of the device and the subsequent diagnosis of Filter perforation has made Plaintiff, Sara McPherson, dramatically more susceptible to the threat of imminent threat of death, migration, thrombosis, blockage or other life-threatening side effects (noted in the FDA alerts about IVC filters).

65.    The alerts issued by the FDA regarding IVC filters strongly advises physicians to remove patient's filters, focusing on retrievable filters but issued for IVC filters in general, also within two months of implantation or when the issues of DVT and PE have diminished.

66.    BRAUN Defendants state on various sources that their filters were "Extraordinary design for exceptional performance. The VenaTech® LP is the new standard in permanent vena caval filtration..." and "Proven conical design for effective clot-trapping and preservation of caval patency. Unique, patented* stabilizing legs and hooks to ensure self-centering and optimal positioning."

67.    At all times relevant hereto, BRAUN Defendants knew its IVC filters had potential defects and knew that these defects were attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted in vivo.

68.    The BRAUN Defendants failed to disclose to physicians, patients, or Plaintiff that its permanent IVC filters, including the BRAUN VenaTech™ vena cava filter, were subject to breakage, collapse, causing thrombus and/or the appropriate degree of risk of damage to the vena cava wall.

10

69.     At all times relevant hereto, BRAUN Defendants continued to promote their IVC filters, including the B. BRAUN VenaTech™ vena cava filter, as safe and effective, even though the clinical trials that had been performed were not adequate to support long or short-term efficacy.

70.     BRAUN Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the IVC filters, including the BRAUN VenaTech™ vena cava filter, as aforesaid.

71.     BRAUN Defendants specifically advertise the construction of the filter as "effective [for] clot trapping and preservation of caval patency."

72.     BRAUN Defendants specifically advertised the construction of the filter as "Extraordinary Design for Exceptional Performance"

73.     BRAUN Defendants specifically advertised the construction of the filter as "The VenaTech® LP Vena Cava Filter System is indicated for the prevention of recurrent pulmonary embolism via placement in the vena cava."

74.     The failure of the B. BRAUN VenaTech™ vena cava filter is attributable in part to the fact that IVC filters, including the Defendants' filter, suffer from a design defect causing the filters to be unable to withstand the normal anatomical and physiological loading cycles exerted in vivo.

75.     At all times relevant hereto, BRAUN Defendants failed to provide sufficient warnings and instructions that would have put Plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of the B. BRAUN VenaTech™ vena cava filter.

76.     BRAUN Defendants' brochure and instructions for us, lacked any notable warnings or indication to the full extent of risks and hazards related to their product.

11

77.    The B. BRAUN VenaTech™ vena cava filter was designed, manufactured, distributed, sold, and/or supplied by BRAUN Defendants, and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Braun Defendants' knowledge of the product's failure and serious adverse events.

78.    As a direct and proximate result of the B. BRAUN VenaTech™ vena cava filter, Plaintiff, Sara McPherson, is at risk of suffering from serious health complications, as well as current ones, due to the long-term implant of the filter.

79.    Plaintiff's complications and heightened risk of future injuries can be attributable to the B. BRAUN VenaTech™ vena cava filter which includes the increased risk of DVT despite the implanted device, constant pains in the abdominal region, risk of the filter migrating to the other parts of the vena cava, heart, lungs or other organs, fracture or breakage of the filter, perforation of the vena cava or other soft tissue, and other complications.

80.    As a direct and proximate result of the wrongful acts and omissions of Defendants, Plaintiff suffered severe injuries, including but not limited to economic damages, severe permanent injuries, emotional distress, psychological trauma of living with a defective product implanted in Plaintiff's body.

## DISCOVERY RULE, ESTOPPEL, AND FRAUDULENT CONCEALMENT

81.    Plaintiff incorporate by reference the factual portion of this complaint as if fully set forth herein and additionally, or in the alternative, if same be necessary, allege as follows.

82.    Plaintiff plead that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiff had been injured, the cause of the injury, and the tortuous nature of the wrongdoing that caused the injury.

83.     Despite diligent investigation by Plaintiff into the cause of Plaintiff's injuries, including consultations with Plaintiff's medical providers, the nature of Plaintiff's injuries and damages and their relationship to the Plaintiff's filter and Defendants' wrongful conduct was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing of each Plaintiff's claims. Therefore, under appropriate application of the discovery rule, each Plaintiff's suit was filed well within the applicable statutory limitations period.

84.     Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by the Defendants when they had a duty to disclose those facts.

85.     The Defendants' purposeful and fraudulent acts of concealment have kept each Plaintiff ignorant of vital information essential to the pursuit of that Plaintiff's claims, without any fault or lack of diligence on that Plaintiff's part, for the purpose of obtaining delay on that Plaintiff's part in filing on Plaintiff's causes of action. The Defendants' fraudulent concealment did result in such delay.

86.     The Defendants are estopped from relying on the statute of limitations defense because Defendants failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of their filters.

87.     The Defendants were and remain under a continuing duty to disclose the true character, quality and nature of the device that was implanted in Plaintiff, but instead they concealed them. The Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which they must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiff.

13

## CORPORATE/VICARIOUS LIABILITY

88.    At all times herein mentioned, the BRAUN Defendants were agents, servants, partners, aiders and abettors, co-conspirators and/or joint venturers, and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to each other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

89.    There exists and, at all times herein mentioned, there existed a unity of interest in ownership between the Defendants such that any individuality and separateness between them has ceased and these Defendants are alter egos. Adherence to the fiction of the separate existence of these Defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction a fraud and/or would promote injustice.

90.    At all times herein mentioned, the Defendants, and each of them, were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing and/or advertising for sale, and selling products for use by the Plaintiff. As such, each Defendants is individually, as well as jointly and severally, liable to the Plaintiff for Plaintiff's damages.

91.    At all times herein mentioned, the officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious.

14

## JURISDICTION AND VENUE

92.     This Court has personal jurisdiction over Plaintiffs Sara McPherson and Robert McPherson, as they are residents and domiciled in the State of Florida.

93.     Venue is proper in this Court because venue is deemed proper in the Circuit Court in the county in which cause of action arose, or where any party to the action resides. The actions alleged herein took part in Florida, and in this County.

94.     Further, a substantial amount of the Defendants' conduct, as alleged herein by Plaintiffs, took place throughout the State of Florida, including within Brevard County.

95.     Requiring Defendants to litigate these claims in Florida does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

96.     Defendants systematically availed itself of the State of Florida by conducting regular and sustained business and engaging in substantial commerce and business activity in Florida, including without limitation researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, processing, marketing, promoting, distributing, selling, and/or introducing into interstate commerce in the State of Florida, either directly or indirectly, its products, including the B. BRAUN VenaTech™ vena cava filter.

97.     Defendants should have expected that its acts would have consequences within the United States, specifically, in the State of Florida; Defendants continue to derive substantial revenue from its actions, dealings, associations, relationships, or otherwise, as described herein, in connection with the B. BRAUN VenaTech™ vena cava filter.

98.     Plaintiff's claims arise from and relate to Defendants' purposeful avail of the State of Florida because resident Defendants' wrongful conduct in researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling,

15

processing, marketing, promoting, distributing, selling, the B. BRAUN VenaTech™ vena cava filters took place, in whole or in part, in the State of Florida. Therefore, the claims of Plaintiffs relate to and arise from Defendants' explicit contacts and purposeful avail of the State of Florida.

## COUNT I - NEGLIGENCE

99.     For a Count of Negligence, it must be shown that Defendants had a duty to Plaintiff, there was a breach of the duty, the breach was cause in fact and proximate cause of Plaintiff's injuries, and a show of damages.

100.    Defendants had a duty to exercise reasonable case in the design, research, manufacture, marketing, testing, advertisement, supply, promotion, packaging, sale, and distribution of the B. BRAUN VenaTech™ vena cava filter, including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective or unreasonably dangerous to consumers and users of the product.

101.    Defendants had a duty to warn health care providers and users of the full spectrum of risks, dangers and adverse side effects of implantation of the B. BRAUN VenaTech™ vena cava filter.

102.    Defendants received constructive knowledge of the dangers and dysfunctions of the device as manufactured, made evident by 900 adverse event reports to the FDA regarding IVC filters generally, in addition to the published MAUDE Adverse Event Reports regarding the B. BRAUN VenaTech™ vena cava filters.

103.    Defendants knew or should have known that the B. BRAUN VenaTech™ vena cava filters were unsafe for long-term implantation, despite calling its device a permanent filter, when used as designed and manufactured and failed to exercise due diligence and care and were otherwise negligent in the design, manufacture and marketing of this device.

104.    This includes the failure to adequately test the product and the failure to provide adequate warnings to health care providers and consumers of the device, which includes Plaintiff.

105.    As shown by the subsequent studies and FDA warning on IVC filters, there are severe complications associated with the long-term implant of these devices.

106.    Defendants market its filter is a permanent filter which is intended to long-term use, but research has found that complications arising from permanent filters and non-permanent filters are essentially the same.

107.    This is especially true with regards to the lack of warning provided to heath care providers regarding the duration and long-term use of the device. The Defendants were negligent, and breached its duties of reasonable care to Plaintiff, Sara McPherson, with respect to the B. BRAUN VenaTech™ vena cava filter in one or more of the following respects:

    a.  Despite knowledge of hazards and knowledge that the product was frequently prescribed for the use, Defendants failed to accompany the product with adequate warnings and instructions regarding the adverse and long-lasting side effects associated with the use of the B. BRAUN VenaTech™ vena cava filter;

    b.  Was designed and manufactured so as to present an unreasonable risk of the device tilting and/or perforating the vena cava wall;

    c.  Was designed and manufactured so as to present an unreasonable risk of causing thrombosis, and/or

    d.  Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body.

    e.  Defendants failed to conduct adequate testing in regard to the long-term safety of the device;

    f.  Despite knowledge of hazards, Defendants failed to adequately warn Plaintiff's physicians or Plaintiff, Sara McPherson, that the use of the B. BRAUN VenaTech™ vena cava filter could result in severe side effects as described above;

    g.  Despite the fact that the Defendants knew or should have known that its implanted medical device caused unreasonably dangerous side effects, Defendants failed to adequately disclose the known or knowable risks associated with the B. BRAUN VenaTech™ vena cava filter as set forth above;

    h.  Defendants willfully and deliberately failed to adequately disclose these risks, and in doing so, acted with a conscious disregard of the safety and/or welfare of its end users, including Plaintiff, Sara McPherson;

17

    i.  Defendants failed to design, develop, implement, administer, supervise and monitor its clinical trials for the B. BRAUN VenaTech™ vena cava filter device;

    j.  Defendants, in its promotion of the device, was aggressive and deceitful, and promoted the B. BRAUN VenaTech™ vena cava filter in a fraudulent manner, despite evidence known to Defendants that the B. BRAUN VenaTech™ vena cava filter was dangerous.

108.   Defendants furthermore breached its duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the B. BRAUN VenaTech™ vena cava filter in, among others, through the following actions:

    a.  Designing and distributing a product which the Defendants knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

    b.  Designing and distributing a product in which it knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other devices available for the same purpose due to its permanent nature;

    c.  Failing to use reasonable care in manufacturing the product and producing a product that differed from its design or specifications or from other typical units from the same production line;

    d.  Failing to perform reasonable pre and post-market testing of the B. BRAUN VenaTech™ vena cava filter to determine whether or not the product was safe for its intended use;

    e.  Failing to provide adequate instructions, guidelines, and safety precautions, including pre-sale and post-sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the B. BRAUN VenaTech™ vena cava filter;

    f.  Advertising, marketing and recommending the use of the B. BRAUN VenaTech™ vena cava filter, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the B. BRAUN VenaTech™ vena cava filter;

    g.  Representing that the B. BRAUN VenaTech™ vena cava filter was safe for its intended permanent implantation when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

    h.  Continuing to manufacture and sell the B. BRAUN VenaTech™ vena cava filter with the knowledge that the product was dangerous and not reasonably safe;

    i.   Failing to use reasonable and prudent care in the design, research, manufacture, and development of the B. BRAUN VenaTech™ vena cava filter so as to avoid the risk of serious harm associated with the long-term use of the IVC filter;

    j.   Failing to establish an adequate quality assurance program used in the manufacturing of the B. BRAUN VenaTech™ vena cava filter; and

    k.   Failing to establish and maintain an adequate post-market surveillance program.

109.    On or about September 25, 2008, the date Plaintiff Sarah McPherson was implanted with the filter without these adequate warnings.

110.    Defendants continued to manufacture and market its product despite the knowledge, despite the multiple studies and reports, whether direct or ascertained with reasonable care, that the B. BRAUN VenaTech™ vena cava filter posed a serious risk of bodily harm to consumers.

111.    Furthermore, the economic damages and physical harm caused by Defendants' conduct would not have occurred had Defendants exercised the high degree of care imposed upon it and Plaintiff therefore also pleads the doctrine of *res ipsa loquitur.*

112.    The conduct of the Defendants in this matter was intentional, wanton, willful and outrageous beyond all standards of common decency and in reckless disregard and callous indifference to the public, the users of the B. BRAUN VenaTech™ vena cava filter, and the Plaintiff.

113.    As a result of the beach of duty by Defendants, Plaintiff Sara McPherson, suffered from a post implantation perforation of her IVC due to the B. BRAUN VenaTech™ vena cava filter. But for the negligent actions by Defendants, Plaintiff suffered her injuries.

114.    As a direct and proximate consequence of Defendants' negligence, Plaintiff, Sara McPherson, sustained serious personal injuries and related losses including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

WHEREFORE, Plaintiffs, Sara McPherson and Robert McPherson, demands judgment against the Defendants, and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT II - STRICT PRODUCTS LIABILITY: DEFECTIVE DESIGN

115.    The B. BRAUN VenaTech™ vena cava filter designed, marketed, manufactured and distributed by Defendants were defective and not reasonably safe due to its improper, inadequate, and defective design.

116.    Defendants designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the B. BRAUN VenaTech™ vena cava filter.

117.    The long-term implant of the B. BRAUN VenaTech™ vena cava filter device was unreasonable dangerous to consumers as documented by the multiple reports of issues with the filters.

118.    Defendants designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the B. BRAUN VenaTech™ vena cava filter.

119.    The B. BRAUN VenaTech™ vena cava filter was expected to, and did, reach the intended consumers, handlers, and persons receiving the product with no substantial change in the condition in which the product was designed, produced, manufactured, sold, distributed, labeled, and marketed by Defendants.

120.    The B. BRAUN VenaTech™ vena cava filter was manufactured, designed, marketed, labeled and sold in with a defective design, for use by Plaintiff, Sara McPherson's physicians and/or healthcare providers, and all other consumers of the product, including Plaintiff, making the product unreasonably dangerous.

121.    If not for the defective design of the B. BRAUN VenaTech™ vena cava filter, Plaintiff Sara McPherson, would not have suffered the injuries she did.

122.    The B. BRAUN VenaTech™ vena cava filter device was designed by defendants to be a Permanent filter, a filter that was expected to be safe and effective for the long-term implant of the device.

123.    However, the B. BRAUN VenaTech™ vena cava filter, as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective in design and formulation in that when it left the hands of the Defendants (acting as manufacturer, supplier, and distributor) as the filter's design was not effective nor safe for long-term implantation and use.

124.    The foreseeable risks of harm caused by the product exceeded the claimed benefits of the product and Plaintiff was subsequently harmed due to this defective design.

125.    This is displayed by the various counts of problems that arose from Plaintiff's use of the filter such as the perforation of the struts of the filter as a result of the defective design.

126.    Defendants' B. BRAUN VenaTech™ vena cava filter was unreasonably dangerous and was also more dangerous than expected by the ordinary consumer.

127.    At all times relevant to this action, Defendants knew and had reason to know that its B. BRAUN VenaTech™ vena cava filter was inherently defective in its design and unreasonably dangerous as designed, formulated, and manufactured by Defendants, when used

21

and administered in the form manufactured and distributed by Defendants, and in the manner instructed by Defendants to be used and administered to the Plaintiff and other consumers.

128.  Plaintiff, Sara McPherson's physicians and/or healthcare providers used and administered the B. BRAUN VenaTech™ vena cava filter for the purpose intended by Defendants, and in a manner normally intended to be used and administered, namely for implantation of the B. BRAUN VenaTech™ vena cava filter.

129.  Defendants had a duty to design, create, and manufacture s product that was reasonably safe and not unreasonably dangerous for its normal, common, and intended use.

130.  Defendants' product was not reasonably fit, suitable, or safe for its anticipated use, and safer, reasonable alternative designs existed and could have been utilized.

131.  The later use of retrievable and optional filter was a result of the noted long-term risks associated with IVC filters. This includes creation and marketing of the VenaTech Convertible™ Vena Cava filter by BRAUN defendants.

132.  The newer design of the Braun Defendants' IVC filter are based on the designs of their previous B. BRAUN VenaTech™ vena cava filter but allows the device to be converted into a stent after the threat of DVT and PEs have passed.

133.  This allows the filter to mitigate some of the long-term risks and adverse events seen in permanent IVC filters.

134.  A reasonably prudent manufacturer would not have placed the product in the stream of commerce with knowledge of these design flaws and market this product the way the Defendants did.

135.  Defendants designed, developed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk of

serious harm to the health, safety, and well-being of the Plaintiff, Sara McPherson, and other consumers.

136.    Defendants is therefore strictly liable for the Plaintiff's injuries and damages sustained proximately caused by Plaintiff's use of the product.

137.    Plaintiff, Sara McPherson, could not, by the exercise of reasonable care, discover the defective condition of Defendants' product and/or perceive its defective dangers prior to its administration by Plaintiff's physicians and/or healthcare providers.

138.    Additionally, Plaintiff's competent medical team and physicians could not, by standards or reasonable care, detect the product's defective features or dangers prior to implanting it in the Plaintiff, Sara McPherson.

139.    Defendants knew or should have known that a reasonably prudent medical practitioner would rely upon the information and literature provided by the manufacturer of a medical implant device to instruct as to use, and warn as to dangers, defects and adverse side effects.

140.    Nothing provided to Plaintiff or her physicians warned of the injuries she would receive after the long-term implantation of the device.

141.    As a proximate result of Defendants' acts and omissions, the Plaintiff suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for Plaintiff's injuries described in this Complaint, including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

**WHEREFORE,** Plaintiffs, Sara McPherson and Robert McPherson, demands judgment against the Defendants, and requests compensatory damages for past, present, and future pain

and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT III: STRICT PRODUCTS LIABILITY: MANUFACTURING DEFECT

142.   Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the B. BRAUN VenaTech™ vena cava filter that was implanted into Plaintiff.

143.   The B. BRAUN VenaTech™ vena cava filter implanted in Plaintiff contained a condition or conditions, which Defendants did not intend, at the time it left Defendants' control and possession.

144.   Defendants' device was designed and manufactured with the intent of being a permanent filter, meant for long-term implantation.

145.   However, due to the manufacturing defect of the filter, the device was not safe or efficient for long-term use.

146.   The B. BRAUN VenaTech™ vena cava filter has put consumers, such as Plaintiff, at a significant risk of perforation of the filter and other injuries after long-term use.

147.   Plaintiff and Plaintiff's health care providers used the device in a manner that was reasonably foreseeable to Defendants. The device was subjected to normal and anticipated use by the Plaintiff and Plaintiff's healthcare providers.

148.   A malfunction of the Defendants' B. BRAUN VenaTech™ vena cava filter, while implanted in Plaintiff, resulted in her subsequent injuries and health problems.

149.   As a result of the condition or these conditions, the product injured Plaintiff and

failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner. As a direct and proximate result of the B. BRAUN VenaTech™ vena cava filter's manufacturing defects, Plaintiff has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

**WHEREFORE,** Plaintiffs, Sara McPherson and Robert McPherson, demands judgment against the Defendants, and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT IV – STRICT PRODUCTS LIABILITY: FAILURE TO WARN

150.   Defendants designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the B. BRAUN VenaTech™ vena cava filter.

151.   The B. BRAUN VenaTech™ vena cava filter was expected to, and did, reach the intended consumers, handlers, and persons receiving the product with no substantial change in the condition in which the product was designed, produced, manufactured, sold, distributed, labeled, and marketed by Defendants.

152.   The B. BRAUN VenaTech™ vena cava filter was manufactured, designed, marketed, labeled and sold in a defective condition, for use by the Plaintiff, Sara McPherson's physicians and/or healthcare providers and all other consumers of the product, making the product unreasonably dangerous.

25

153.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its B. BRAUN VenaTech™ vena cava filter and in the course of same, directly advertised or marketed the product to consumers or persons responsible for consumers as a permanent filter, safe for long-term us, and therefore had a duty to warn of the risks associated with the use of its product.

154.    Defendants' in their marketing materials have shown to have two materials used for marketing, advertising, and directives to both Plaintiff and her health care providers; the product brochure and their Instructions for Use ("IFU").

155.    The Defendants' product brochure provides no warnings or indication of possible complications from the use of the IVC filter.

156.    Defendants' IFUs, defendants only list general complications but fail to warn and state the actual extent of potential injuries caused by their IVC filters.

157.    Defendants failed to state the full extent of ways in which product was not safe and the numerous serious side effects, of which Defendants had full knowledge and did not accurately or adequately warn.

158.    Defendants' IFU fail to even have a notable section that clearly indicates warnings and complications nor does it use any strong language that would notify or reasonably be expected to catch the attention of a consumer or their medical provider.

159.    The only section in the IFU that addresses adverse events fails to address the full extent of complications, magnitude of risks involved with the IVC filter. The section cannot be considered a sufficient warning or notice.

160.   Defendants' B. BRAUN VenaTech™ vena cava filter, as designed, researched, developed, manufactured, tested, advertised, promoted, marketed, sold, labeled, and distributed by Defendants, was defective due to the product's inadequate warnings and instructions as to the long-term safety and efficacy of the filter despite its claims.

161.   Defendants knew, or should have known, and adequately warned that its product created a risk of serious and dangerous side effects, including but not limited to, perforation, the migration of the filter to the other parts of the vena cava, heart or other organs, DVT, blood clots, fracture or breakage of the filter and other complications.

162.   The product was under the exclusive control of Defendants and was unaccompanied by appropriate and adequate warnings regarding the risk of severe and permanent injuries associated with its use.

163.   Notwithstanding Defendants' knowledge of the defective condition of its product, Defendants failed to adequately warn the medical community and consumers of the defective product, including the Plaintiff and Plaintiff's healthcare providers, of the dangers and risk of harm associated with the use and administration of its B. BRAUN VenaTech™ vena cava filter.

164.   Defendants downplayed the serious and dangerous side effects of its product to encourage sales and use of the product; consequently, Defendants placed its profits above its customers' safety.

165.   Defendants knew or should have known that the B. BRAUN VenaTech™ vena cava filters were defective and dangerous and showed reckless indifference to or conscious disregard for the Plaintiff's safety by failing to provide proper warnings to the public and the medical community.

166.     Plaintiff, Sara McPherson, received Defendants' B. BRAUN VenaTech™ vena cava filter as intended or in a reasonably foreseeable manner.

167.     Defendants, as a manufacturer of medical products, is held to the level of knowledge of an expert in the field and, further, Defendants had knowledge of the dangerous risks and side effects of its product.

168.     Plaintiff did not have the same knowledge as Defendants and no adequate warning was communicated to Plaintiff's physicians and/or healthcare providers.

169.     Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of the Defendants. The Defendants had a continuing duty to warn Plaintiff, Sara McPherson, and Plaintiff's physicians of the dangers associated with this B. BRAUN VenaTech™ vena cava filter.

170.     Had the Plaintiff received adequate warnings regarding the risks of the device, chances of complications and problems that arise from the long-term use of the filter, Plaintiff would not have used the B. BRAUN VenaTech™ vena cava filter.

171.     Defendants had a continuing duty to warn consumers, persons responsible for consumers, and medical providers of its B. BRAUN VenaTech™ vena cava filter, including Plaintiff, of the dangers associated with its product, and by negligently and/or wantonly failing to adequately warn of the dangers of the use of its product, Defendants breached its duty.

172.     Although Defendants knew, or should have known, of the defective nature of its B. BRAUN VenaTech™ vena cava filter, it continued to design, manufacture, market, and sell its product without providing adequate warnings and instructions concerning the use of its product so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by its B. BRAUN VenaTech™ vena cava filter.

173.    Upon information and belief, the B. BRAUN VenaTech™ vena cava filter as manufactured and supplied by Defendants, was defective due to inadequate post-market warnings or instructions because  after Defendants knew, or should have known, of the risk of serious bodily harm from the long-term us and administration  of its  B. BRAUN VenaTech™ vena cava filter, including. Defendants failed to provide adequate warnings to consumers and/or its healthcare providers about the product, knowing the product could cause serious injury.

174.    The B. BRAUN VenaTech™ vena cava filter, upon information and belief, as manufactured and supplied by Defendants, was defective due to inadequate post-market warnings or instructions when it left Defendants' control.

175.    As a direct and proximate result of the wrongful acts and omissions of Defendants, Plaintiff suffered economic damages, severe injuries, and emotional distress. Plaintiff, Sara McPherson, endured the mental anguish and psychological trauma of living with a defective product implanted in Plaintiff's body.

WHEREFORE, Plaintiffs, Sara McPherson and Robert McPherson, demands judgment against the Defendants, and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as  allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT V – BREACH OF EXPRESS WARRANTY

176.    Defendants, as designer and manufacturers of pharmaceutical implant devices, had a duty to exercise reasonable care in the research, development, design, testing, manufacture,

inspection, labeling, distribution, marketing, promotion, sale and release of the IVC filter, including the duty to:

    a. Ensure that the product did not cause the user unreasonably dangerous side effects;

    b. Warn of dangerous and potentially fatal side effects; and

    c. Disclose adverse material facts when making representations to physicians, the FDA and the public at large, including Plaintiff.

177.    Defendants expressed in their literature, advertisements, and promotions and through representations by their marketing team and sales agents that B. BRAUN VenaTech™ vena cava filters were safe, effective and fit for implantation into the IVC to prevent PE and DVT for which they were designed, manufactured and marketed.

178.    Defendants' relevant webpage[6] pertaining to the VenaTech IVC filter, includes a PDF brochure available for public download that assures the B. BRAUN VenaTech™ vena cava filter in its intended functions.

179.    The Defendants' webpage makes claims about the filter such as it is "Proven conical design for effective clot trapping and preservation of caval patency" and "Unique, patented stabilizing legs and hooks to ensure optimal positioning…"

180.    The brochure provided on the webpage for Defendants' IVC filter is captioned the statement of "Extraordinary Design for Exceptional Performance"

181.    The brochure provided on the webpage further state that the VenaTech™ filter has "Proven Safety and Efficacy in the Prevention of Pulmonary Embolism, A Trusted Standard for Permanent Filtration of the Vena Cava."[7]

---

[6] http://www.bisusa.org/products/vena-cava-filters/vena-tech-lp-vena-cava-filter
[7] http://www.bisusa.org/sites/bbrauninterventionalsystems.com/files/documents/cv-1065-venatech-lp-vena-cava-filter-rev-6-15.pdf

30

182.    The brochure provided on the webpage claims the filter's efficacy as "Proven conical design for effective clot-trapping and preservation of caval patency. Unique, patented stabilizing legs and hooks to ensure self-centering and optimal positioning."

183.    Product brochures are commonly used as advertisement material and can be used by sellers to communicate terms of warranty to a buyer and can be a presumptive part of the agreement.

184.    At the time of making such express warranties, Defendants knew and/or should have known that its B. BRAUN VenaTech™ vena cava filters did not conform to the express warranties and representations and that, in fact, its product was not safe and had numerous serious side effects, of which Defendants had full knowledge and did not accurately or adequately warn.

185.    By making such representations, Defendants expressly warranted that the B. BRAUN VenaTech™ vena cava filters were safe and effective, and fit for the uses for which they were designed, marketed, manufactured and distributed.

186.    As explained above, in fact, the B. BRAUN VenaTech™ vena cava filters were not safe, effective, fit nor proper for the use for which they were designed, manufactured and marketed.

187.    Plaintiff, Sara McPherson, Plaintiff's physicians and/or other healthcare providers, did rely on Defendants' express warranties regarding the safety and efficacy of their product in using the product.

188.    Members of the medical community, including physicians and other healthcare professionals, relied upon BRAUN Defendants' representations and express warranties in connection with the use recommendation, description, and implantation of the

189.    At all times Plaintiff was in privity with Defendants pertaining to her use and acquisition of the B. BRAUN VenaTech™ vena cava filter.

31

190.     At all times Plaintiff's healthcare physicians, such as Dr. Robert J. Kennedy, at Palm Bay Community Hospital was in privity with Defendants regarding the use and acquisition of the B. BRAUN VenaTech™ vena cava filter.

191.     Had Plaintiff's physicians been properly equipped with knowledge of the risks and functions of the IVC Filter that varied from the express warranty, they would not have recommended this implant device to the Plaintiff, Sara McPherson.

192.     As a direct and proximate result of the wrongful acts and omissions of Defendants, Plaintiff has suffered economic damages, severe and possibly permanent injuries, and emotional distress. Plaintiff has also endured and continues to suffer the mental anguish and psychological trauma of living with this defective product implanted in Plaintiff's body.

**WHEREFORE**, Plaintiffs, Sara McPherson and Robert McPherson, demands judgment against the Defendants, and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT VI – BREACH OF IMPLIED WARRANT OF MERCHANTABILITY

193.     At all times relevant to this action, Defendants manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted, and/or sold its B. BRAUN VenaTech™ vena cava filter for use.

194.     Defendants knew of the intended use of its B. BRAUN VenaTech™ vena cava filters at the time Defendants distributed its product for use by the Plaintiff, Sara McPherson'

physicians and healthcare providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

195.    Defendants impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiff, Sara McPherson, Plaintiff's physicians, and Plaintiff's healthcare providers, that the B. BRAUN VenaTech™ vena cava filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and promoted to be used.

196.    Defendants' representations and implied warranties were false, misleading, and inaccurate because its product was defective, and not of merchantable quality.

197.    The representations and implied warranties made by Defendants were false, misleading, and inaccurate because the BRAUN VenaTech™ vena cava filter was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner. Specifically, at the time of Plaintiff's purchase of the BRAUN VenaTech™ vena cava filter from the Defendants, through Plaintiff's physicians and medical facilities, it was not in a merchantable condition in that:

    a.  It was designed in such a manner so as to be prone to an unreasonably high rate of failure, including fracture, migration, excessive tilting, causing thrombosis and/or perforation of bodily organs;
    b.  It was designed in such a manner so as to result in an unreasonably high rate of injury to the organs and anatomy; and
    c.  It was manufactured in such a manner so that the BRAUN VenaTech™ vena cava filter was inadequately, improperly and inappropriately prepared and/or finished, so as to be prone to an unreasonably high rate of failure and/or causing the device to fail.

198.    Upon information and belief, Plaintiff, Sara McPherson, received and began using a B. BRAUN VenaTech™ vena cava filter manufactured by Defendants.

33

199.    At all times Plaintiff was in privity with Defendants pertaining to her use and acquisition of the B. BRAUN VenaTech™ vena cava filter.

200.    At all times Plaintiff's healthcare physicians, such as Dr. Robert J. Kennedy, at Palm Bay Community Hospital was in privity with Defendants regarding the use and acquisition of the B. BRAUN VenaTech™ vena cava filter.

201.    Defendants impliedly warranted that the B. BRAUN VenaTech™ vena cava filter was merchantable pursuant to UCC § 2-314 and suitable for the ordinary purpose for which it was intended to be used for implantation into the IVC to prevent PE and DVT.

202.    Defendants breached its implied warranty because its product were not merchantable nor reasonably suited for the ordinary purpose for which they were being used.

203.    As a result, Defendants breached UCC § 2-314.

204.    As a foreseeable, direct and proximate result of Defendants' acts and omissions and Plaintiff's use of Defendants' defective product, Plaintiff suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for Plaintiff's injuries described herein.

**WHEREFORE,** Plaintiffs, Sara McPherson and Robert McPherson, demands judgment against the Defendants and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

34

## COUNT VII – BREACH OF IMPLIED WARRANTY OF FITNESS

205.   At all times, relevant to this action, Defendants manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted, and/or sold its B. BRAUN VenaTech™ vena cava filter for use.

206.   Defendants knew of the intended use of its B. BRAUN VenaTech™ vena cava filter at the time Defendants distributed its product for use by Plaintiff, Sara McPherson' physicians and healthcare providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

207.   Defendants impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiff, Sara McPherson, Plaintiff's physicians, and Plaintiff's healthcare providers, that B. BRAUN VenaTech™ vena cava filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and promoted to be used.

208.   At all times Plaintiff was in privity with Defendants pertaining to her use and acquisition of the B. BRAUN VenaTech™ vena cava filter.

209.   At all times Plaintiff's healthcare physicians, such as Dr. Robert J. Kennedy, at Palm Bay Community Hospital was in privity with Defendants regarding the use and acquisition of the B. BRAUN VenaTech™ vena cava filter.

210.   Defendants impliedly warranted, pursuant to UCC § 2-315, that the B. BRAUN VenaTech™ vena cava filters were fit for a particular purpose for which they were being used; safe implantation into the IVC to treat PE and DVT.

211.   Defendants' B. BRAUN VenaTech™ vena cava filters were not fit for the particular purpose for which they were being used.

212.   As a result, Defendants breached UCC § 2-315.

213.   As a foreseeable, direct and proximate result of Defendants' acts and omissions and Plaintiff's use of Defendants' defective product, Plaintiff suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for Plaintiff's injuries described herein.

WHEREFORE, Plaintiffs, Sara McPherson and Robert McPherson, demands judgment against the Defendants and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT VIII – FRAUDULENT MISREPRESENTATION

214.   Defendants engaged in commercial conduct by selling B. BRAUN VenaTech™ vena cava filters and misrepresented and omitted material information regarding this product by failing to disclose the known risks of their B. BRAUN VenaTech™ vena cava filter and predecessor devices.

215.   Defendants, as designers and manufacturers of pharmaceutical implant devices, had actual knowledge of facts, which demonstrated that representations of the B. BRAUN VenaTech™ vena cava filter made in literature distributed to the medical community, consumers and the public via website and brochures regarding this IVC filter were false and misleading. Defendants had an absolute duty to disclose the true facts regarding the safety of the filter to physicians, their patients, and the medical community, which they negligently failed to do.

216.    Furthermore, Defendants had a duty to ensure that they had a reasonable basis for making the representations described above, to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations concerning the B. BRAUN VenaTech™ vena cava Filter, all of which Defendants failed to do.

217.    On the Defendants' relevant webpage[8] pertaining to the BRAUN VenaTech™ vena cava filter, displays multiple materials for their B. BRAUN VenaTech™ vena cava Filters.

218.    The Defendants' webpage makes claims about the filter such as it is "Proven conical design for effective clot trapping and preservation of caval patency" and "Unique, patented stabilizing legs and hooks to ensure optimal positioning…"

219.    The Defendants' webpage makes claims about the filter such as it is "Proven conical design for effective clot trapping and preservation of caval patency" and "Unique, patented stabilizing legs and hooks to ensure optimal positioning…"

220.    The brochure provided on the webpage for Defendants' IVC filter is captioned the statement of "Extraordinary Design for Exceptional Performance"

221.    The brochure provided on the webpage further state that the VenaTech™ filter has "Proven Safety and Efficacy in the Prevention of Pulmonary Embolism, A Trusted Standard for Permanent Filtration of the Vena Cava."[9]

222.    The brochure provided on the webpage claims the filer's efficacy as "Proven conical design for effective clot-trapping and preservation of caval patency. Unique, patented stabilizing legs and hooks to ensure self-centering and optimal positioning."

---

[8] http://bisusa.org/products/vena-cava-filters/vena-tech-lp-vena-cava-filter
[9] http://www.bisusa.org/sites/bbrauninterventionalsystems.com/files/documents/cv-1065-venatech-lp-vena-cava-filter-rev-6-15.pdf

223.    The brochure provided on the webpage further claims "The VenaTech® LP Vena Cava Filter System is indicated for the prevention of recurrent pulmonary embolism via placement in the vena cava."

224.    The Defendants' product brochure provides no warnings or indication of possible complications from the use of the IVC filter.

225.    Defendants' IFUs, defendants only list general complications but fail to warn and state the actual extent of potential injuries caused by their IVC filters.

226.    Defendants failed to state the full extent of ways in which product was not safe and had numerous serious side effects, of which Defendants had full knowledge and did not accurately or adequately warn.

227.    At the time and place of the sale, distribution, and supply of the Defendants' BRAUN VenaTech™ vena cava filter to Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendants expressly represented and warranted, by labeling materials submitted with the product, that the BRAUN VenaTech™ vena cava filter was safe and effective for its intended and reasonably foreseeable use.

228.    Important information regarding the risk of the B. BRAUN VenaTech™ vena cava Filter was in the exclusive control of Defendants and was exclusively known by Defendants.

229.    In the furtherance of Defendants' own interests, as designers and manufacturers of pharmaceutical devices and implants, Defendants disseminated false information regarding the IVC Filters to physicians and plaintiffs and did so knowing that the safety of the device as implanted depended on the accuracy of that information.

230.    Further, Defendants knew and expected that recipients of that information would rely on the information that the recipients would take action based upon the information, and that

individuals would be put in peril by such actions and that those individuals would suffer physical harm as a result.

231.   By failing to disclose the known dangers and risks of the B. BRAUN VenaTech™ vena cava filters and predecessor devices, Defendants engaged in unfair and deceptive consumer-oriented acts which intentionally, willfully, and knowingly, fraudulently misrepresented to the medical community, the FDA, and consumers, including Plaintiff, Sara McPherson, and Plaintiff's health care providers, that its B. BRAUN VenaTech™ vena cava Filters had been adequately tested in clinical trials and was found to be safe and effective.

232.   Defendants knew that Plaintiff, Sara McPherson, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the IVC filter, as set forth herein.

233.   Plaintiff and Plaintiff's Physicians, prior to the date of Plaintiff's implant surgery, relied on the Defendants' representations about the product to use the IVC filter in treating the Plaintiff. Defendants' misrepresentation induced the use of their products to Plaintiff and Plaintiff's physicians.

234.   Prior to the implantation of the Defendants' B. BRAUN VenaTech™ vena cava Filter in the Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendant expressly represented and warranted, by labeling materials submitted with the product, that the B. BRAUN VenaTech™ vena cava filter was safe and effective for its intended and reasonably foreseeable use to those said healthcare providers, medical facilities and the medical community as a whole.

235.     Based on the representation of these materials, the Plaintiff's medical providers and the medical community believed the Defendants' device was safe for long term use and provided relief and treatment that was represented.

236.     This information was used by the medical community and conveyed to Plaintiff sometime prior to her September 25, 2008 surgery.

237.     As a result of these representations, Plaintiff spoke to her physicians, including Dr. Kennedy, about IVC filter devices on and before September 25, 2008. Her physicians, by the way of the misrepresentations made by Defendant, confirmed the representations Plaintiff had seen regarding the B. BRAUN VenaTech™ vena cava filter.

238.     Defendants knew or believed at the time it made its fraudulent misrepresentations, that its misrepresentations were false and fraudulent regarding the dangers and risks associated with use of its B. BRAUN VenaTech™ vena cava filters. Defendants made its fraudulent misrepresentations intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of their product, such Plaintiff, Sara McPherson.

239.     Defendants' fraudulent misrepresentations were made with the intent of defrauding and deceiving the medical community, Plaintiff, Sara McPherson, and the public, and also inducing the medical community, and the public, to recommend, dispense, and use Defendants' product.

240.     The aforementioned misrepresentations or omissions were made to Plaintiff, Sara McPherson, to Plaintiff's physicians, and the medical community, all of whom justifiably and foreseeably relied on those representations or omissions. Plaintiff, Sara McPherson, would not have suffered injuries but for the above misrepresentations or omissions of Defendants. Thus,

Defendants and Defendants' misrepresentations or omissions were a cause in fact and a proximate cause of Plaintiff's damages.

241.   As a direct and proximate consequence of Defendants' fraudulent misrepresentations, the Plaintiff sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

**WHEREFORE,** Plaintiffs, Sara McPherson and Robert McPherson demands judgment against Defendants, and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT IX - FRAUDULENT CONCEALMENT

242.   At all times during the course of dealing between Defendants and Plaintiff, and/or Plaintiff, Sara McPherson' healthcare providers, and/or the FDA, Defendants misrepresented material fact in the safety of the VenaTech™ vena cava filters for its intended use.

243.   On the Defendants' relevant webpage[10] pertaining to the BRAUN VenaTech™ vena cava filter, displays multiple materials for their VenaTech™ filters.

244.   The Defendants' webpage makes claims about the filter such as it is "Proven conical design for effective clot trapping and preservation of caval patency" and "Unique, patented stabilizing legs and hooks to ensure optimal positioning…"

---

[10] http://bisusa.org/products/vena-cava-filters/vena-tech-lp-vena-cava-filter

245.    The brochure provided on the webpage for Defendants' IVC filter is captioned the statement of "Extraordinary Design for Exceptional Performance"

246.    The brochure provided on the webpage further state that the VenaTech™ filter has "Proven Safety and Efficacy in the Prevention of Pulmonary Embolism, A Trusted Standard for Permanent Filtration of the Vena Cava."[11]

247.    The brochure provided on the webpage claims the filer's efficacy as "Proven conical design for effective clot-trapping and preservation of caval patency. Unique, patented stabilizing legs and hooks to ensure self-centering and optimal positioning."

248.    The brochure provided on the webpage further claims "The VenaTech® LP Vena Cava Filter System is indicated for the prevention of recurrent pulmonary embolism via placement in the vena cava."

249.    The Defendants' product brochure provides no warnings or indication of possible complications from the use of the IVC filter.

250.    Defendants' IFUs, defendants only list general complications but fail to warn and state the actual extent of potential injuries caused by their IVC filters.

251.    Defendants failed to state the full extent of ways in which product was not safe and had numerous serious side effects, of which Defendants had full knowledge and did not accurately or adequately warn.

252.    At the time and place of the sale, distribution, and supply of the Defendants' BRAUN VenaTech[tm] vena cava filter to Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendants expressly represented and warranted, by labeling materials

---

[11] http://www.bisusa.org/sites/bbrauninterventionalsystems.com/files/documents/cv-1065-venatech-lp-vena-cava-filter-rev-6-15.pdf

submitted with the product, that the BRAUN VenaTech™ vena cava filter was safe and effective for its intended and reasonably foreseeable use.

253.   Defendants knew or were reckless in not knowing that its representations were false.

254.   In representations to Plaintiff Sara McPherson's healthcare providers, and/or the FDA, Pharmaceutical Defendants fraudulently concealed and intentionally omitted the following material information:

      a.   that the VenaTech™ vena cava filters were not safe;
      b.   that the risks of adverse events with the VenaTech™ vena cava filters were high;
      c.   that the risks of adverse events with the VenaTech™ vena cava filters were not adequately tested and/or known by Defendants;
      d.   that Defendants were aware of dangers in the VenaTech™ vena cava filters, in addition to and above and beyond those associated with alternative medications;
      e.   that the VenaTech™ vena cava filters were defective, and that it caused dangerous side effects;
      f.   that the VenaTech™ vena cava filter was manufactured negligently;
      g.   that the VenaTech™ vena cava filter was manufactured defectively;
      h.   that the VenaTech™ vena cava filter was manufactured improperly;
      i.   that the VenaTech™ vena cava filters were designed negligently;
      j.   that the VenaTech™ vena cava filters were designed defectively; and
      k.   that the VenaTech™ vena cava was designed improperly.

255.   Defendants were under a duty to disclose to Plaintiff, Sara McPherson, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA the defective nature of the B. BRAUN VenaTech™ vena cava filters.

256.   Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the IVC filters.

257.   Defendants' concealment and omissions of material facts concerning, *inter alia*, the safety of the IVC filter was made purposefully, willfully, wantonly, and/or recklessly, to mislead and induce Plaintiff, and Plaintiff's physicians, hospitals and healthcare providers into reliance, continued

use of the B. BRAUN VenaTech™ vena cava filter, and actions thereon, and to cause them to purchase, prescribe and/or dispense the device and/or use the product. Defendants' misrepresentation was made with knowledge that their statements were false.

258.    Defendants knew that Plaintiff, Sara McPherson, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the IVC filter, as set forth herein.

259.    Plaintiff and Plaintiff's Physicians, prior to the date of Plaintiff's implant surgery, relied on the Defendants' representations about the product to use the IVC filter in treating the Plaintiff. Defendants' misrepresentation induced the use of their products to Plaintiff and Plaintiff's physicians.

260.    Prior to the implantation of the Defendants' B. BRAUN VenaTech™ vena cava Filter in the Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendant expressly represented and warranted, by labeling materials submitted with the product, that the B. BRAUN VenaTech™ vena cava filter was safe and effective for its intended and reasonably foreseeable use to those said healthcare providers, medical facilities and the medical community as a whole.

261.    Based on the representation of these materials, the Plaintiff's medical providers and the medical community believed the Defendants' device was safe for long term use and provided relief and treatment that was represented.

262.    This information was used by the medical community and conveyed to Plaintiff sometime prior to her September 25, 2008 surgery.

263.    As a result of these representations, Plaintiff spoke to her physicians, including Dr. Kennedy, about IVC filter devices on and before September 25, 2008. Her physicians, by the way of the misrepresentations made by Defendant, confirmed the representations Plaintiff had seen regarding the B. BRAUN VenaTech™ vena cava filter.

264.    As a result of these actions, Plaintiff was induced into agreeing to having Defendants' B. BRAUN VenaTech™ vena cava Filter implanted in her.

265.    Plaintiff, Sara McPherson, as well as Plaintiff's doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

266.    As a result of the foregoing acts and omissions, Plaintiff, Sara McPherson, was caused to suffer and/or was at a greatly increased risk of serious and dangerous side effects, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

WHEREFORE, Plaintiffs, Sara McPherson and Robert McPherson, demands judgment against Defendants, and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT X - NEGLIGENT MISREPRESENTATION

267.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

268.   Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiff, Sara McPherson, the FDA and the public in general that said product, the VenaTech™ vena cava filter, had been tested and found to be a safe and effective form of therapy.

269.   The representations made by Defendants were, in fact, false and Defendants had knowledge of such impersonations.

270.   Defendants failed to exercise ordinary care in the representation of the VenaTech™ vena cava filter, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce in those Defendants negligently misrepresented the implanted device's high risk of unreasonable, dangerous side effects.

271.   At all times relevant to the cause, and as detailed herein, Defendants negligently provided Plaintiff, Plaintiff's health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information concerning the VenaTech filter; including, but not limited to, misrepresentations relating to the safety, efficacy, failure rate and approved uses of the IVC filter.

272.   Defendants' intent and purpose in making these misrepresentations was to deceive and defraud the public and the medical community, including Plaintiff's health care providers; to gain the confidence of the public and the medical community, including Plaintiff's health care providers; to falsely assure them of the quality of the VenaTech™ vena cava filter and its fitness for use; and to induce the public and the medical community, including Plaintiff's healthcare providers to request, recommend, prescribe, implant, purchase, and continue to use the IVC filter.

273.   The foregoing representations and omissions, alleged in this complaint, by Defendants were in fact false. The B. BRAUN VenaTech™ vena cava filter is not safe, fit, or effective for human use in its intended and reasonably foreseeable manner.

274.    The use of the B. BRAUN VenaTech™ vena cava filter is hazardous to the user's health, and said device has a serious propensity to cause users to suffer serious injuries, including, without limitation, the injuries Plaintiff suffered. Further, the device has a significantly higher rate of failure and injury than do other comparable devices.

275.    In reliance upon the false and negligent misrepresentations and omissions made by Defendants, Plaintiff, Plaintiff's health care providers and the Plaintiff's agents were induced to use the B. BRAUN VenaTech™ vena cava filter, thereby causing Plaintiff to sustain severe and permanent personal injuries.

276.    Defendants knew and had reason to know that Plaintiff, Plaintiff's physicians, and the general medical community did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by Defendants, and would not have prescribed and implanted same, if the true facts regarding the device had not been concealed and misrepresented by Defendants.

277.    Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the VenaTech™ vena cava filter.

278.    At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the VenaTech™ vena cava filter, Plaintiff, Plaintiff's health care providers and the Plaintiff's agents were unaware of said Defendants' negligent misrepresentations and omissions.

279.    Plaintiff, Plaintiff's physicians, the Plaintiff's agents and general medical community reasonably relied upon misrepresentations and omissions made by Defendants where

47

the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the IVC filter.

280.    Defendants knew that Plaintiff, Sara McPherson, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the IVC filter, as set forth herein.

281.    Plaintiff and Plaintiff's Physicians, prior to the date of Plaintiff's implant surgery, relied on the Defendants' representations about the product to use the IVC filter in treating the Plaintiff. Defendants' misrepresentation induced the use of their products to Plaintiff and Plaintiff's physicians.

282.    Prior to the implantation of the Defendants' B. BRAUN VenaTech™ vena cava Filter in the Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendant expressly represented and warranted, by labeling materials submitted with the product, that the B. BRAUN VenaTech™ vena cava filter was safe and effective for its intended and reasonably foreseeable use to those said healthcare providers, medical facilities and the medical community as a whole.

283.    Based on the representation of these materials, the Plaintiff's medical providers and the medical community believed the Defendants' device was safe for long term use and provided relief and treatment that was represented.

284.    This information was used by the medical community and conveyed to Plaintiff sometime prior to her September 25, 2008 surgery.

285.    As a result of these representations, Plaintiff spoke to her physicians, including Dr. Kennedy, about IVC filter devices on and before September 25, 2008. Her physicians, by the

way of the misrepresentations made by Defendant, confirmed the representations Plaintiff had seen regarding the B. BRAUN VenaTech™ vena cava filter.

286.    As a result of the negligent misrepresentations of the Defendants set forth hereinabove, said Defendants knew and were aware or should have known that the VenaTech™ vena cava filter had been insufficiently tested, and/or had not been tested, that it lacked adequate and/or accurate warnings, and/or that it created a high risk and/or higher than acceptable risk, and/or higher than reported/represented risks, as well as unreasonable, dangerous side effects, including, migration to the heart, lungs or other organs, perforation of the vena cava wall and tissue, worsened pulmonary embolism, DVT as well as other severe and personal injuries which are permanent and lasting in nature.

**WHEREFORE,** Plaintiffs, Sara McPherson and Robert McPherson, demands judgment against Defendants, and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT XI - LOSS OF CONSORTIUM
### (Plaintiff Robert McPherson, against Defendants)

287.    At all relevant times hereto, where applicable, Plaintiff Sara McPherson was married to Plaintiff Robert McPherson, and they continue to be married.

288.    Spouse Plaintiffs, Family Member Plaintiffs, and/or intimate partners of the aforesaid Plaintiffs, such as Plaintiff Robert McPherson, has suffered injuries and losses as a result of the Plaintiff Sara McPherson's injuries from the implantation of Defendants' B. BRAUN VenaTech™ vena cava filter.

49

289.    For the reasons set forth herein, Plaintiff Robert McPherson has necessarily paid and have become liable to pay for medical aid, treatment, monitoring, medications, and other expenditures and will necessarily incur further expenses of a similar nature in the future as a proximate result of Defendants' misconduct.

290.    For the reasons set forth herein, Plaintiff Robert McPherson suffered and will continue to suffer the loss of their loved one's support, companionship, services, society, love and affection.

291.    Plaintiffs allege that their marital relationship was impaired and depreciated and altered the marital association between husband and wife.

292.    Plaintiffs have suffered great emotional pain and mental anguish.

293.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs no longer can engage in full enjoyment of each other's company or engage in intercourse due to plaintiff Sara McPherson's precarious sensitivity and easily triggered pain.

294.    As a direct and proximate result of Defendants wrongful conduct, Spouse Plaintiff (Robert McPherson), Family Member Plaintiffs, and/or intimate partners of the aforesaid Plaintiffs, have sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

295.    Defendant is liable to Spouse Plaintiffs, Family Member Plaintiffs, and intimate partners jointly and severally for all general, special and equitable relief to which Spouse Plaintiffs, Family Member Plaintiffs, and intimate partners are entitled by law.

**WHEREFORE,** Plaintiffs, Sara McPherson and Robert McPherson, demands judgment against Defendants, and requests compensatory damages for past, present, and future pain and

suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## PRAYER FOR PUNITIVE DAMAGES

296.    Plaintiffs are entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and its complete and total reckless disregard for the public safety and welfare.

297.    Defendants had knowledge of, and were in possession of, evidence demonstrating that the B. BRAUN VenaTech™ vena cava filter was defective, unreasonably dangerous, and had a substantially higher failure rate than did other similar devices on the market.

298.    Despite its knowledge, Defendants failed to, among other purposeful acts, inform or warn Plaintiff or Plaintiff's health care providers of the dangers, establish and maintain an adequate quality and post-market surveillance system, and recall the B. BRAUN VenaTech™ vena cava filter from the market.

299.    As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, Plaintiff has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## CONCLUSION AND PRAYER

WHEREFORE, Plaintiffs requests trial by jury and that the Court grant the following relief against Defendants on all counts of the Complaint, including:

(A) Money damages representing fair, just and reasonable compensation for Plaintiffs' common law and statutory claims in excess of $50,000.00;

(B) Lost Wages;

(C) Punitive and/or Treble Damages pursuant to state law;

(D) Disgorgement of profits and restitution of all costs;

(E) Attorneys' fees pursuant to state law;

(F) Pre-judgement and post-judgement interests as authorized by law on the judgements which enter on Plaintiff's behalf;

(G) Cost of suit;

(H) Delay Damages; and

(I) Such other relief as is deemed just and proper.

**WHEREFORE**, Plaintiffs demands judgment against Defendants for compensatory damages, punitive damages and costs of suit as provided by law.

Respectfully submitted,
**MARC J. BERN & PARTNERS LLP**

By: /s/ Carmen A. De Gisi
CARMEN A. De GISI, ESQ.
Florida Bar No: 97303
101 West Elm Street, Suite 215
Conshohocken, Pennsylvania
Tel: (610) 941-4444
Fax: (610) 941-9880
Primary E-Mail: cdegisi@bernllp.com
*Attorneys for Plaintiffs*